IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARTHA A. CHURCHILL,**

    Plaintiff,

vs.

**JOHN J. CALLAHAN**, Acting Commissioner,
Social Security Administration,

    Defendant.

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

97 AUG -5 PM 1: 58

Civil No. CV 97-**1030 MV**

**LESLIE C. SMITH**

## COMPLAINT PURSUANT TO
## FREEDOM OF INFORMATION ACT

Now comes the Plaintiff, Martha A. Churchill, by and through her attorney, Bennett Law Office, P.A., by Dorsett C. Bennett, II, and complains against the Social Security Administration as follows:

1.  This Court has jurisdiction pursuant to the Federal Freedom of Information Act, 5 U.S.C. § 552 (a) (2) (A) and § 552 (a) (2) (C).

2.  The Social Security Administration has a duty to make available for public inspection and copying all final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases, as set forth in § 552 (a) (2) (A).

3.  The Defendant also has a duty to maintain and make available for public inspection and copying a current index providing identifying information for the public as to any matter issued, adopted, or promulgated, including decisions made by any Social Security Administrative Law Judge, pursuant to § 552 (a) (2) (C).

4. Plaintiff has made requests of the Social Security Administration for certain public information concerning the decisions issued by Administrative Law Judge Gary L. Vanderhoof, but the SSA has failed and refused to provide any meaningful response.

5. Plaintiff is an attorney whose main area of practice is the representation of Social Security Disability Claimants.

6. In the course of her practice, Plaintiff has learned that ALJ Gary L. Vanderhoof exhibits bias against applicants for Social Security Disability benefits and for SSI benefits, and issues Unfavorable Decisions to claimants based on false statements about the medical evidence and testimony.

7. Plaintiff believes that ALJ Vanderhoof is particularly biased against persons suffering mental illness. ALJ Vanderhoof has a pattern and practice of denying their claims on the grounds that hallucinations and suicide attempts, as documented by a treating physician, are merely "subjective symptoms" which he routinely rejects on the grounds that the claimant "lacks credibility." This is a Catch-22 in that mentally ill persons, by reason of their mental illness, often "lack credibility" and also lack insight as to the nature of their illnesses.

8. Plaintiff believes that a statistical study of decisions issued by ALJ Vanderhoof will prove the existence and the extent of his bias against Social Security claimants.

9. Plaintiff has requested certain information of the SSA, and has requested an opportunity to review the decisions of ALJ Vanderhoof, all of which would tend to prove the existence of judicial bias, but the information is being wrongly withheld by the SSA under the pretense that Defendant supposedly does not keep such information, or that it is supposedly "private."

2

10. The FOIA provides that if otherwise public information contains material which would constitute a "clearly unwarranted invasion of personal privacy," that the agency "may delete identifying details when it makes available or publishes an opinion," pursuant to section 552 (a) (2) (C).

11. The SSA wrongfully refuses to provide the public documents, even with the names of individual Social Security claimants redacted.

12. Providing the names of the Social Security claimants would not, in fact, pose an invasion of personal privacy, in that such records routinely enter the public record when unsuccessful applicants file complaints in Federal Court.

13. Nevertheless, Plaintiff is willing to comply with § 552a which states that the agency may not disclose records containing confidential information unless "(5) to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable."

14. The information sought is of public interest, and should be disclosed at no charge, pursuant to § 552 (a) (4) (A) (iii) which states "Documents shall be furnished without charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

15. Plaintiff has reason to believe that hundreds of destitute and disabled individuals are wrongly denied Social Security benefits due to bias on the part of ALJ Vanderhoof, with the result that they are forced to live on the streets, forced to suffer

3

without necessary medications, and sometimes die prematurely, creating a burden on society and a burden on New Mexico taxpayers through increased social services.

15. Plaintiff has filed numerous Complaints about ALJ Vanderhoof to the Chief ALJ in Dallas, Texas, including a complaint on behalf of a man with a broken neck whose case was denied by Judge Vanderhoof ("*subjective* complaints of pain" despite uncontroverted statements by his treating physician). Defendant has stonewalled the Plaintiff and refused to take any action whatsoever to investigate or deal with the flagrant bias documented in the Complaints filed with the agency.

16. By failing and refusing to cooperate with Plaintiff's requests pursuant to the FOIA, the Defendant has been able to hide final decisions of ALJ Vanderhoof and make them nearly unavailable because such decisions are routinely sent out of town to a storage facility, where they are difficult to obtain, after about a year from the date of the decision.

17. It is futile to work within the agency in an attempt to obtain the requested information, since the Defendant has consistently given Plaintiff the run-around for months at a time, all the while sending ALJ Vanderhoof's decisions to a far off storage facility where Defendant can thereafter claim there is no access.

18. Plaintiff first started asking for this information in mid-September, 1996, and the request was passed up the line for many months until it was finally denied May 9, 1997, on the spurious grounds that the agency need not compile information unless for agency purposes. On May 23, 1997, Plaintiff requested an opportunity to review the actual decisions, but the Defendant will use delaying tactics for many months unless this Court compels Defendant to provide immediate access to the decisions.

19. In early July, 1997, an agent of Defendant admitted it would take only 15 or

4

20 minutes for a clerical worker to obtain a two-month statistical sample of ALJ Vanderhoof's decisions.

20. Defendant is refusing to release the requested information because it would provide evidence to support a Class Action lawsuit on behalf of individuals who were or will be denied a fair hearing due to the bias of ALJ Vanderhoof.

21. As evidence of the Defendant's failure to provide records reasonably requested by Plaintiff, see attached Exhibits:

"A" Letter from Plaintiff to SSA in Albuquerque, September 18, 1996 (1 page)

"B" Letter from Jeffrey S. Smith to Plaintiff, dated September 24, 1996 (1 page)

"C" Letter from Anne H. Pate to Plaintiff, October 4, 1996 (1 page)

"D" Letter from Plaintiff to Jack Wolf, October 9, 1996 (1 page)

"E" Letter from Plaintiff to Jack Wolf, October 21, 1996 (2 pages)

"F" Letter from Plaintiff to Jack Wolf, October 31, 1996 (1 page)

"G" Memorandum to Jack Wolf from Sarah A. L. Humphreys, December 3, 1996 (1 page)

"H" Letter from Jack Wolf to Plaintiff, December 6, 1996 (1 page, not including attachments)

"I" Letter from Vincent Sanudo to Plaintiff, January 28, 1997 (2 pages)

"J" Letter from Plaintiff to Deputy Commissioner for Policy and External Affairs, February 4, 1997, with cartoon (3 pages)

"K" Letter from Darrell Blevins to Plaintiff, May 9, 1997 (1 page)

"L" Letter from Plaintiff to Darrell Blevins, May 23, 1997, (2 pages)

"M" Letter from Plaintiff to Jeffrey Smith, July 7, 1997 (2 pages)

"N" Response of Jeffrey S. Smith dated July 11, 1997 (1 page)

WHEREFORE Plaintiff requests that the Defendant be Ordered to do the following:

I.  Make a copy available to Plaintiff of any and all final decisions issued by ALJ Vanderhoof from the Albuquerque Office of Hearings and Appeals.

II. Make an index available to Plaintiff showing the decisions granted and denied by ALJ Vanderhoof.

III. Make an index available to Plaintiff listing each decision granted or denied by other ALJ's in the Albuquerque Office of Hearings and Appeals.

IV.  Make an index available to Plaintiff showing the number of Unfavorable Decisions of ALJ Vanderhoof which were appealed, indicating how many of those were reversed or remanded on appeal.

V.   Make computer records available to Plaintiff for purposes of obtaining statistics on the final decisions issued by the Albuquerque Office of Hearings and Appeals.

VI. Compensate Plaintiff for her attorney fees and costs bringing this action.

Respectfully Submitted,
Bennett Law Office, P.A.

By: **Dorsett C. Bennett, II**
P.O. Box 1194
Roswell, NM 88202
(505) 623-1415

Dated:  August 4, 1997

# BENNETT LAW OFFICE, P.A.

200 W. First #527 • Petroleum Building
P.O. Box 1194
Roswell, New Mexico 88202-1194

Dorsett C. Bennett II
Martha A. Churchill

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

September 18, 1996

Social Security Administration
Office of Hearings and Appeals
2400 Louisiana NE, Suite 300
Albuquerque, NM 87110-9871

Re:  Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, please send me the following information:

    1.  For each Administrative Law Judge in the Albuquerque office, state how many Favorable Decisions the judge issued, and how many Unfavorable Decisions the judge issued, in 1995.  Please provide the same information for the first six months of 1996.

    2.  For each Administrative Law Judge in the Albuqerque office, state how many of the judge's Unfavorable Decisions resulted in an appeal to the Appeals Council.  Please provide this information for the year 1995 and also for the first six months of 1996.

    3.  For each appeal to the Appeals Council, state how many of those appeals, for each judge, resulted in affirmance by the Appeals Council; and how many were either reversed or remanded.

    4.  For each Administrative Law Judge in the Albuquerque office, state how many Complaints have been filed alleging judicial bias and for each Complaint state the date of that Complaint.

Sincerely,

*Martha Churchill*

Martha A. Churchill

MC:dz

## EXHIBIT "A"



Sc    Security  Administration

Office of Hearings  and  Appeals

AFC Building  1, Suite  300
2400 Louisiana  Boulevard,  NE
Albuquerque,  NM  87110-4338
September 24, 1996

Martha A. Churchill
Bennett Law Office, P.A.
PO Box 1194
Roswell, New Mexico 88202-1194


Dear Ms. Churchill,

I have forwarded your request for statistics from the Albuquerque Office of
Hearings and Appeals to Regional Staff Attorney Ann Pate. You will be notified
once a determination is reached on the release of such information.

Sincerely,

JEFFREY S. SMITH
Hearing Office Manager

# EXHIBIT "B"



**Social Security Administration**

**Office of Hearings and Appeals**

OHA-1 ROOM 1135
OFFICE OF HEARINGS AND APPEALS
SOCIAL SECURITY ADMINISTRATION
1200 MAIN ST STE M110
DALLAS TX 75202-4324

October 4, 1996

Bennett Law Office, P.A.
Ms. Martha A. Churchill
200 W. First #527
Petroleum Building
P. O. Box 1194
Roswell, New Mexico  88202-1194

RE: Freedom of Information Act Request

Dear Ms. Churchill:

Your request dated September 18, 1996 has been forwarded to me by the Albuquerque Hearing Office.  I have forwarded your request to the Office of Hearings and Appeals FOIA officer at at the following address:

> Jack Wolfe
> FOIA Officer
> Office of Hearings and Appeals
> Suite 702
> 5107 Leesburg Pike
> Falls Church, Virginia  22401-3255

Please direct any followup to Mr. Wolfe.

Sincerely,

Anne H. Pate
Regional Attorney

**EXHIBIT "C"**

BENNETT LAW OFFICE, P.A

200 W. First #527 • Petroleum Building
P.O. Box 1194
Roswell, New Mexico 88202-1194

Dorsett C. Bennett II
Martha A. Churchill

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

October 9, 1996

Jack Wolfe, FOIA Officer
Office of Hearings and Appeals
Suite 702
5107 Leesburg Pike
Falls Church, VA 22401-3255

Re:  FOIA request

Dear Mr. Wolfe:

I understand Commissioner Chater has approved a new procedure for review of
misconduct complaints against Administrative Law Judges, and that on November 18,
1994, she signed a "Procedure to Review Complaints of Alleged Misconduct Against
Administrative Law Judges."

Could you please send me a copy of that procedure?

I would also like to know whether this procedure has been promulgated, and if not, please
send me a copy of all documents issued by the Social Security Administration indicating
when this might happen.

Sincerely,

Martha A. Churchill

MC:dz

**EXHIBIT "D"**

# BENNETT LAW OFFICE, P.A.

200 W. First #527 • Petroleum Building
P.O. Box 1194
Roswell, New Mexico 88202-1194

Dorsett C. Bennett II
Martha A. Churchill

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

October 21, 1996

Jack Wolf
Office of Hearings and Appeals
5107 Leesburg Pike, Suite 702
Falls Church, VA 22401-3200

Re: Freedom of Information Act Request

Dear Mr. Wolf:

I need certain information about the procedures by SSA for investigations of complaints regarding ALJ bias.

The Federal Register has published "Social Security Administration Procedures Concerning Allegations of Bias or Misconduct by Administrative Law Judges," dated October 26, 1992. This publication states that procedures "are being issued by SSA" and will ensure various things in a list, including the point that "every complaint will be reviewed or investigated in a timely manner by an official who was not involved in the alleged improper conduct."

Please tell me what procedures have been issued by SSA to accomplish this?

Who selects or appoints the "official" who will conduct the review?

What is involved in an investigation by SSA following a complaint of ALJ bias? Does the "official" appointed to do the investigation carry out personal interviews? If so, with whom? Is a record kept of such interviews? Does the official investigate files which were handled by the ALJ in question? Does he or she review a random sample of such files?

When a claimant (or the representative) files a complaint alleging judicial bias, and also files an appeal with the Appeals Council, does the Appeals Council conduct an investigation of the judicial bias allegations? Who is in charge of such investigations? Do the investigations include personal interviews? If so, with whom? Is a record kept of such interviews? Does the investigator examine files handled by the ALJ in question?

If the claimant files a complaint alleging judicial bias, but does NOT file an appeal with the Appeals Council, who conducts the investigation into the complaint of judicial bias?

## EXHIBIT "E"

Has the SSA established interim procedures for handling allegations of ALJ unfairness or misconduct?  If so, please send me a copy of the procedures.

I would also like to know whether those procedures have ever been implemented in the past with respect to an allegation of ALJ bias.  If so, please supply me with the name, address and phone number of the individual at SSA who was responsible for carrying out the procedures in that instance(s).

Thank you very much for your attention to this matter.

Sincerely,

Martha A. Churchill

MC:dz

# BENNETT LAW OFFICE, P.A.

### 200 W. First #527 • Petroleum Building
### P.O. Box 1194
### Roswell, New Mexico 88202-1194

Dorsett C. Bennett II
Martha A. Churchill

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

October 31, 1996

Jack Wolf
Office of Hearings and Appeals
5107 Leesburg Pike, Suite 702
Falls Church, VA 22401-3200

CERTIFIED MAIL
Return Receipt Requested

Dear Mr. Wolf:

On October 21, I wrote you a letter containing some questions pursuant to the Freedom of Information Act.  I am not sure if you received the letter, so another copy is enclosed here for your convenience.

I have some additional questions, pursuant to the FOIA, about complaints of ALJ bias.  If more than one complaint of bias is made to the Appeals Council concerning the same ALJ, does the Appeals Council have any mechanism or procedure for determining that a certain ALJ has been the subject of multiple bias complaints?  How many bias complaints need to be filed against any one ALJ, before someone at the Appeals Council would take notice?

Let me phrase this another way.  Does the Appeals Council sort bias complaints according to the ALJ complained of, so that it can know whether any one ALJ has been the subject of complaints on a regular basis?

If a claimant (or representative) files a brief with the Appeals Council, in which there are complaints of ALJ bias as part of the argument within the brief, does the Appeals Council recognize the argument as being, essentially, a complaint of ALJ bias?

If one particular ALJ is the subject of bias complaints on a regular basis, is there any individual or department within the Appeals Council whose job is to investigate the complaints?  If so, please provide me with the name, address and telephone number of the person whose job duty would include such an investigation.

Sincerely,

*Martha Churchill*

Martha A. Churchill

MC:dz

**EXHIBIT "F"**



**SOCIAL SECURITY ADMINISTRATION**

Refer to:

Office of Hearings and Appeals
5107 Leesburg Pike
Falls Church, VA  22041-3255

December 3, 1996

NOTE TO:   Jack Wolf
           Information Disclosure Specialist

SUBJECT:   FOIA Requests from Martha A. Churchill

We have received three requests for information from the above-named requester.  We have searched our files and found only three documents that are responsive to her requests (see attached).

It may be helpful for the requester to know that the agency still is operating under the procedures outlined in the attached "Directive to OHA Personnel Concerning Interim Responsibilities and Procedures for Handling Complaints of Bias or Misconduct on the Part of Administrative Law Judges."  The Proposed Administrative Law Judge Misconduct Procedure sent by the former Deputy Commissioner for Programs to the Commissioner (also attached) is still under discussion.  There is no agreement at this time regarding when, or if, the proposed procedure will be implemented.

Sarah A.L. Humphreys
Acting Special Counsel

Attachments

**EXHIBIT "G"**



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings and Appeals
5107 Leesburg Pike, Suite 702
Falls Church, VA 22041-3200

DEC 0 6 1996

Ms. Martha A. Churchill
Bennett Law Office, P.A.
P.O. Box 1194
Roswell, NM  88202

Re:  Your Requests Under the Freedom of Information Act (FOIA)

Dear Ms. Churchill:

I am responding to your FOIA requests of October 9, 21, and 31 because of my responsibility for processing requests under the Freedom of Information Act and the Privacy Act.

I am enclosing copies of the documents I received in response to the three requests.  I am also enclosing a copy of a memorandum, dated December 3, 1996, in which our Acting Special Counsel includes comments which she thinks may be helpful to you.

Sincerely yours,

*Jack Wolf*

Jack Wolf
Information Disclosure Specialist

Enclosures

**EXHIBIT "H"**



# SOCIAL SECURITY

Refer to:
TAG NE1649

January 28, 1997

Ms. Martha A. Churchill
Bennett Law Office, P.A.
200 W. First #527
Petroleum Building
Roswell, NM  88202-1194

Dear Ms. Churchill:

This is in response to your request for statistical
information about Administrative Law Judge decisions, appeals
and complaints.  Your request has been referred to me because
of my responsibilities under the Freedom of Information Act.

In 1989 the Office of Hearings and Appeals discontinued
maintaining statistics showing the number of cases denied and
allowed by individual Administrative Law Judges.

We do not maintain statistics on the number of a judge's
unfavorable decisions resulting in an appeal, nor on how many
of those appeals were affirmed, reversed or remanded by the
Appeals Council.

And, in response to your request for information on how many
complaints have been filed alleging judicial bias for each
complaint, we can neither affirm nor deny the existence of
such records.  If the records existed, they would be exempt
from disclosure under exemption six of the Freedom of
Information Act (FOIA) (5 U.S.C. 552(b)(6)).  This provision
exempts from mandatory disclosure personal information about
living individuals that could reasonably be expected to
constitute a clearly unwarranted invasion of personal
privacy, unless disclosure would serve the public interest
(that is, inform the public about the Agency's performance of
its statutory duties) to a degree outweighing the
individual's right to privacy.  Ordinarily, disclosure of
records such as those you have requested would not serve the
public interest to such a degree.

**EXHIBIT "I"**

Even the fact of the existence of such records is protected
under the same exemption.  Disclosing that such records on an
identified individual exists would cause a clearly
unwarranted invasion of the individual's privacy.

If you disagree with this decision, you may request a review.
Any appeal should be mailed within 30 days of receipt of this
letter to the Deputy Commissioner for Policy and External
Affairs, Social Security Administration, 6401 Security
Boulevard, Baltimore, Maryland 21235 in an envelope marked
"Freedom of Information Appeal."

Sincerely,

Vincent Sanudo
Freedom of Information Officer

# BENNETT LAW OFFICE, P.A.
### 200 W. First #527 • Petroleum Building
#### P.O. Box 1194
#### Roswell, New Mexico 88202-1194

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

Dorsett C. Bennett II
Martha A. Churchill

February 4, 1997

Freedom of Information Appeal
Deputy Commissioner for Policy and External Affairs
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Re: TAG NE1649

Dear Sir or Madam:

I just received a letter concerning information I had requested about the number of complaints filed against certain Administrative Law Judges.

First of all, I wanted statistics concerning the number of favorable and unfavorable decisions issued by ALJ's. While you may not be "maintaining statistics" in this regard, it would be a simple matter for you to count this up and answer my question. The opinions are issued from a computerized office in Albuquerque and obviously it would be extremely easy to find the information I have requested.

Secondly, I asked how many decisions are reversed on appeal to the Appeals Council. It would be a simple matter to count up the number of such decisions and provide me with this information. I find it hard to believe that the Social Security Administration does not keep such statistics, but if you don't, I am sure it would not be difficult to obtain the information I have requested.

Thirdly, there are the complaints filed against individual ALJ's. There is no "personal information" contained in such complaints. Those complaints are distributed through normal agency channels. Such complaints are not created by SSA employees for their own personal convenience. There is nothing "personal" about a complaint filed against an ALJ, it is part of the SSA's official records and it is subject to disclosure pursuant to FOIA.

Numerous cases have been decided in the federal courts concerning narrow construction of the exemptions contained in the FOIA. See, for example, *John Doe Agency v. John Doe Corp.*, USNY 1989, 110 S. Ct. 471, 493 U.S. 146, 107 L. Ed. 2d 462, rehearing denied 110 S. Ct. 884, 493 U.S. 1064, 107 L. Ed. 2d 966, which states that exemptions

## EXHIBIT "J"

from disclosure set forth in the Freedom of Information Act must be narrowly construed and the burden is on the agency to sustain its action.

Exemptions to disclosure requirements are intended to be exclusive and narrowly construed to ensure that government agencies do not develop a rubber stamp "top secret" mentality behind which legitimately disclosable documents can be shielded. *Conoco Inc. v. U.S. Dept. of Justice*, C.A. 3 (Del.) 1982, 687 F.2d 724.

All I have asked for is the *statistics* concerning the number of complaints filed against certain ALJ's. Pursuant to the FOIA, I should have a right to the statistics, and indeed, I should have a right to review and obtain copies of the complaints themselves. Those complaints are part of the agency records and there is nothing "personal" about any ALJ since the complaints have to do with the ALJ's *work*, not his or her personal life.

Please reconsider this matter and provide me with the information I have requested.


Sincerely,

Martha A. Churchill

MC:dz





# SOCIAL SECURITY

Refer to:
TAS  NG2582

May 9, 1997

Ms. Martha A. Churchill
Bennett Law Office, P.A.
200 W. First #527
Petroleum Building
Rosewell, NM  88202-1194

Dear Ms. Churchill:

As the Freedom of Information Officer I am responding to your request for statistical information about Administrative Law Judge decisions, appeals and complaints.

As we  have already explained, we do not maintain the statistics you are requesting.  You now indicate that it would be easy for us to compile these statistics for you. The Freedom of Information Act does not require us to create a record to respond to requests for data not already compiled for **agency** purposes, or edit computerized data files to create new records.

In addition, the Freedom of Information Act provides that Federal agencies make their records available to the public, but it does not require the agency to respond to specific questions.

We therefore have no information to respond to your request.

Sincerely,

Darrell Blevins

Darrell Blevins
Freedom of Information Officer

**EXHIBIT "K"**

Do you have a printout of claimants who have appealed from the Albuquerque office to the Appeals Council, with an indication which judge they are appealing?

What computerized data do you have with respect to the decisions being issued by the ALJ's from the Albuquerque office?

I look forward to hearing your response.


Sincerely,

Martha A. Churchill

MC:dz

# BENNETT LAW OFFICE, P.A.

200 W. First #527 • Petroleum Building
P.O. Box 1194
Roswell, New Mexico 88202-1194

Dorsett C. Bennett II
Martha A. Churchill

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

May 23, 1997

Darrell Blevins
Freedom of Information Officer
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

CERTIFIED MAIL
Return Receipt Requested

Re:   TAS NG2582

Dear Mr. Blevins:

I received your letter of May 9, 1997.  Since you say that you do not compile statistics concerning the favorable and unfavorable decisions written by each ALJ, let me request the opportunity to review the actual decisions at the Social Security office in Albuquerque at a date and time which is convenient for all.

I am relying on 5 USCA § 552 (a) (2)  "Each agency... shall make available for public inspection and copying-- (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases..."

To begin with, I would like to review every decision issued by ALJ Gary L. Vanderhoof during the month of April, 1996.  My intention is merely to compile statistical data, and I am not going to transfer the information in a form that is individually identifiable.  See 5 USCA § 552a (b) (5) "to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable."

If that is not acceptable to you, please feel free to redact the names and Social Security numbers of the individual claimants.

I would also like to know what computerized data files you have concerning the decisions of the various ALJ's.  I would like to review a print-out of any such data files.

Do you have a printout of claimants indicating whether each one received a favorable or unfavorable decision, along with which judge issued the decision?

# EXHIBIT "L"

# BENNETT LAW OFFICE, P.A.

200 W. First #206 • Petroleum Building
P.O. Box 1194
Roswell, New Mexico 88202-1194

Tel.: (505) 623-1415
Fax: (505) 624-9666
E-mail: Sethlaw@RT66.com

Dorsett C. Bennett II
Martha A. Churchill

July 7, 1997

Jeffrey Smith, Administrator
Social Security Administration
Office of Hearings and Appeals
2400 Louisiana NE, Suite 300
Albuquerque, NM 87110-9871

Re: Freedom of Information Act

Dear Mr. Smith:

As we discussed, I would like an opportunity to sit down and read the decisions issued by ALJ Vanderhoof for at least a two-month period, so that I can count how many decisions were favorable, and how many were unfavorable.

Based on the cases I have reviewed, it appears that the final decisions issued by an ALJ are public record, although the identity of the individual claimants may be protected. If you wish, you may redact the names of the claimants. I believe that on nearly all the decisions, the claimant's name is mentioned on the first sheet and not given again during the decision, so the name could be redacted easily with a small amount of white out on the first page.

Since my purpose is merely to do a statistical analysis, I do not believe it is actually necessary for you to redact the names. The FOIA allows you to turn over decisions of this type for a statistical analysis so long as the identities of the individuals are not revealed in the final numbers. That is true here, because I am intending only to count up the number of decisions which are favorable or unfavorable, and the statistics I compile will contain no identifying information.

I would like to review a two-month sample and obtain statistics for myself concerning the number of cases he grants. Please provide me with ALJ Vanderhoof's decisions for the months of July and August, 1996. If those are not available, please provide me with another two-month period so that I can obtain a statistical sample.

**EXHIBIT "M"**

If you do not keep the decisions based on the date the decision was issued, I would be willing to review a two-month period based on some other date, such as the date the hearing was requested.

If it is easier for you, feel free to provide me with a computer disc containing the decisions, with the names deleted, which would save paper.

I would like to know how far back you keep copies of decisions of the ALJ's in the Albuquerque office.  I would also like to know how far back you have computer archives containing the decisions.

I will be in Albuquerque on the afternoon of July 15, and I would like to sit down and review the decisions at that time.


Sincerely,

Martha A. Churchill

MC:dz



Social Security Administration
Office of Hearings and Appeals

APC Building 1, Suite 300
2400 Louisiana Boulevard, NE
Albuquerque, NM 87110-4338

July 11, 1997

Martha A. Churchill
Bennett Law Office, P.A.
P.O. Box 1194
Roswell, NM 88202-1194

Re: Request for Information under the FOIA

Dear Ms. Churchill,

As I have related in a recent conversation and previous correspondence, I do not have the authority to make Freedom of Information Act determinations. It is my understanding that you are pursuing this request through normal channels. You will soon receive confirmation through the mail that your latest request has also been forwarded to the FOIA office.

Therefore, I will not be able to accommodate this request until advised to do so by higher authority. For your information, we keep hard copies of ALJ decisions for one year from the disposition date. However, some decisions do mention the claimant or other individuals by name throughout the text, depending on the individual technique of the decision writer or the ALJ's preference.

Also, the administrative burden of sanitizing a large number of decisions, with the resultant responsibility of complying with FOIA provisions, is also a consideration. My staff members have no absolutely no training on the specific guidelines for releasing information under the FOIA.

I will gladly advise you when your request is either approved or denied, and comply with that decision. Until such time I will not be able to release ALJ Vanderhoof's decisions for your review.

Sincerely,

JEFFREY S. SMITH
Hearing Office Manager

EXHIBIT "N"