# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARTHA A. CHURCHILL,**

   **Plaintiff,**

**vs.**

**KENNETH S. APFEL, Commissioner,**
**Social Security Administration,**

   **Defendant.**

## <u>PLAINTIFF'S BRIEF PURSUANT TO</u>
## <u>THE COURT'S ORDER OF APRIL 2, 1998</u>

Electronically Filed With the Court
June 1, 1998

By:

Dennis W. Montoya
Attorney for Plaintiff,
Martha A. Churchill, Esq.
P.O. Box 15235
Rio Rancho, NM  87174-0235
(505) 896-1708
(505) 896-1804 (Facsimile)

also:

1905 Lomas Boulevard, NW
Albuquerque, NM  87104
(505) 246-8499
(505) 246-8599 (Facsimile)

## TABLE OF CONTENTS

**PROCEDURAL POSTURE OF THE CASE** ........................................................ 1

**STATEMENT OF THE CASE** ................................................................ 2

PLAINTIFF'S COMPLAINT............................................................................ 2

DEFENDANT'S ANSWER ............................................................................ 7

**THE LEGAL STANDARDS** ................................................................. 9

PURPOSE OF THE FREEDOM OF INFORMATION ACT ............................................. 9

THE AGENCY CARRIES THE BURDEN ................................................................ 10

EXEMPTIONS ........................................................................................ 11

"FINAL AGENCY DECISIONS" ARE SUBJECT TO FOIA DISCLOSURE ................... 13

AGENCY "RECORDS" ARE SUBJECT TO FOIA DISCLOSURE ................................. 15

   **COMPUTER-STORED RECORDS ARE SUSCEPTIBLE TO FOIA DISCLOSURE** .. 16

   **SUMMARIES OF RECORDS ARE DISCLOSABLE UNDER FOIA** .......................... 16

**ARGUMENT** ............................................................................. 16

ALL INFORMATION REQUESTED BY THE PLAINTIFF IS FULLY DISCLOSABLE UNDER FOIA ..................................................................................... 16

THE TENTH CIRCUIT'S OPINION IN SHEET METAL WORKERS vs. USAF IS DISTINGUISHED FROM THE CASE AT BAR ......................................................... 19

**CONCLUSION** ............................................................................. 21

# TABLE OF AUTHORITIES

## CASES

Anderson v. Department of Health & Human Servs., 907 F.2d 936 (10th Cir.1990)........9

Andrews v. Veterans Admin., 838 F.2d 418 (10th Cir.), cert. denied, 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 35 (1988) ................................................................................11

Audubon Society v. United States Forest Service, 104 F.3d 1201 (10th Cir. 1997) ........9

Badran v. U.S. Dept. of Justice, 652 F.Supp. 1437 (N.D. Ill. 1987) .........................15, 17

Bristol-Meyers Co. v. FTC, 598 F.2d 18 (1978) .......................................................15, 17

Bureau of Nat. Affairs, Inc. v. U.S. Dept. of Justice, 742 F.2d 1484 (App. D.C. 1984)15, 17

Department of the Air Force v. Rose, 525 U.S. 352, 96 S.Ct. 1592, 482 L.Ed.2d 11 (1976) ...............................................................................................................................13

Federal Labor Relations Auth. v. United States Dep't of Defense, 984 F.2d 370 (10th Cir.1993)..........................................................................................................................11

Grumman Aircraft Engineering Corp. v. Renegotiation Board, 325 F.Supp. 1146 (D.C. 1971), Aff'd 482 F.2d 710 (App. DC) ..........................................................................14

Hale v. United States Dep't of Justice, 973 F.2d 894 (10th Cir.1992), vacated on other grounds,  509 U.S. 918, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993) ............................11

Hopkins v. HUD, 929 F.2d 81 (2d Cir.1991) ................................................................20

National Prison Project v. Sigler, 390 F.Supp. 789 (D.C. Dist. 1975) ...........................13

NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 44 L.Ed.2d 29, 95 S.Ct. 1504 (1975)...14

Painting & Drywall Work Preservation Fund v. HUD, 936 F.2d 1300 (D.C.Cir.1991) ....20

Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force, 26 F.3d 1479 (9th Cir.1994)........................................................................................................20

Patterson v. FBI, 705 F.Supp. 1033 (D.C.N.J. 1989)....................................................12

Petroleum Info. Corp. v. United States Dep't of Interior, 976 F.2d 1429, 1433 (D.C.Cir.1992) ................................................................................................................10

## TABLE OF AUTHORITIES (continued)

Sears, Roebuck & Co. v. NLRB, 346 F.Supp. 751 (D.C. Dist. 1972), Aff'd without opinion 480 F.2d 1195 (App. DC) ..................................................................................14

Sheet Metal Workers International Association, Local No. 9 v. United States Air Force, 63 F.3d 994, 997 (10th Cir. 1995)....................................................................10, 19, 20

Teich v. Food and Drug Administration, 751 F.Supp. 243 (D.C. Dist. 1990) ...........16, 17

United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, ----, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994) ......................................................10, 12, 21

United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) .........................................10, 11, 12, 21

United States Dep't of State v. Ray, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) ....................................................................................................................9, 10

Vaughn v. Rosen, 484 F.2d 820 (1973), cert. denied, 415 U.S. 977 ......................12, 17

Willamett Industries, Inc. v. U.S., 530 F.Supp. 904 (D.C. Or. 1981) ........................15, 17

Yeager v. Drug Enforcement Administration, 678 F.2d 315 (D.C. App. 1982).........16, 17

**STATUTES**

40 U.S.C. §276a (The Davis-Bacon Act) ........................................................................19

40 U.S.C. §276c (The Copeland Anti-Kickback Act).......................................................19

5 U.S.C .§552(a)(2) ........................................................................................................13

5 U.S.C. §552(a)(2)(A) .......................................................................1, 3, 8, 13, 17

5 U.S.C. §552(a)(2)(C) .......................................................................1, 3, 6, 8, 19

5 U.S.C. §552(b)(6) ........................................................................................................11

5 U.S.C. S 552(a)(4)(B) ..................................................................................................10

Federal Freedom of Information Act ...........................................................................1, 3

## TABLE OF AUTHORITIES (continued)

**OTHER AUTHORITIES**

Court File, Answer filed November 25, 1997 .............................................8, 9, 10, 14, 23

Court File, Complaint filed August 5, 1997 ..................................2, 3, 4, 5, 6, 7, 8, 22, 23

Court File, Exhibit "A" to Complaint filed August 5, 1997 (Correspondence dated September 18, 1996, from Plaintiff to SSA, Albuquerque, requesting statistical breakdown of ALJ decisions ..........................................................................................4

Court File, Exhibit "I" to Complaint filed August 5, 1997 (Correspondence dated January 28, 1997, from SSA Freedom of Information Officer Vincent Sanudo to Plaintiff..........6

Court File, Exhibit "K" to Complaint filed August 5, 1997 (Correspondence dated May 9, 1997, from SSA Freedom of Information Officer Darrell Blevins, stating that statistics are not kept by SSA....................................................................................................4

Court File, Exhibit "L" to Complaint filed August 5, 1997 (Correspondence dated May 23, 1997, from Plaintiff to Darrell Blevins (SSA), requesting inter alia, to review decisions of ALJ Vanderhoof for April 1996...................................................................4

Court File, Exhibit "N" to Complaint filed August 5, 1997  (Correspondence from SSA, Albuquerque, Hearing Office Manager Jeffrey S. Smith to Plaintiff.) ...........................6

Court File, Order of April 2, 1998, establishing briefing schedule. ...................................1

**REGULATIONS**

20 C.F.R. §402.120 ...........................................................................................................8

## PROCEDURAL POSTURE OF THE CASE

Plaintiff, Martha A. Churchill, filed her complaint in this case on August 5, 1997, pursuant to the Federal Freedom of Information Act, 5 U.S.C. §552(a)(2)(A) and 552(a)(2)(C).   The Defendant, Kenneth S. Apfel, Commissioner, Social Security Administration, filed his Answer on November 25, 1995.   An Initial Scheduling Order issued herein on December 2, 1997.   On February 12, 1998, Plaintiff filed her Unopposed Motion for Withdrawal and Substitution of Counsel, which was granted by the Court on February 17, 1998. Undersigned counsel therewith entered his appearance on behalf of the Plaintiff. The parties met and conferred pursuant to Federal Rule of Civil Procedure 16, and thereafter a "Rule 16 Conference" was held.   A Provisional Discovery Plan was entered herein on April 1, 1998.   By order entered April 2, 1998, the Court established a briefing schedule for purposes of briefing the issue of "whether the Plaintiff is entitled to the information she seeks under the Freedom of Information Act."[1]   (Court File, Order of April 2, 1998, establishing briefing schedule.)   By separate Order, the Court suspended the local "packet" rule in order to facility

---

[1]   Although she welcomes the opportunity to argue her case, the Plaintiff notes that the Court's Order contradicts the established burden of proof in FOIA cases.   It is the agency's burden to demonstrate that it is entitled to withhold the requested information, and not Plaintiff's to demonstrate that she is entitled to have it.   See United States Dep't of State v. Ray, 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.2d. 526 (1991), cited and discussed herein.

---

electronic filing.  This brief is timely filed pursuant to the April 2, 1998, Order of the Court, if filed on or before June 1, 1998.

## STATEMENT OF THE CASE

### *PLAINTIFF'S COMPLAINT*

Martha A. Churchill is an attorney whose main area of practice is the representation of Social Security Disability Claimants.  (Court File, Complaint filed August 5, 1997, ¶5.)  In the course of her practice, Plaintiff became aware that ALJ Gary L. Vanderhoof "exhibits bias against applicants for Social Security Disabilitry benefits and for SSI benefits, and issues Unfavorable Decisions to claimants based on false statements about the medical evidence and testimony. (Complaint filed August 5, 1997, ¶6.)  Plaintiff reports particular bias on the part of ALJ Vanderhoof with respect to claimants suffering from mental illness. (Complaint filed August 5, 1997, ¶7.)   Plaintiff further reports having filed numerous complaints with SSA against ALJ Vanderhoof, including complaints on behalf of a client suffering from a broken neck, whose claims was denied by Vanderhoof on the grounds that his reports of pain were "subjective", despite uncontroverted medical evidence in support of the claim.  (Complaint filed August 5, 1997, ¶15.)  Plaintiff complains of complicity on the part of the Agency (SSA), in that "Defendant has stonewalled the Plaintiff and refused to take any action

whatsoever to investigate or deal with the flagrant bias documented in the Complaints filed with the agency."   (Complaint filed August 5, 1997, ¶15.) Plaintiff further complains that SSA has succeeded in making the decisions of ALJ Vanderhoof "nearly unavailable", because decisions are sent to a storage facility outside of Albuquerque, where they are thereafter difficult to obtain. (Complaint filed August 5, 1997, ¶¶16 and 17.)

Plaintiff filed her complaint in this Court pursuant to the Federal Freedom of Information Act, 5 U.S.C. §552(a)(2)(A) and §552(a)(2)(C), charging that she had first begun to ask for information from the Social Security Administration (SSA) regarding the decisions of Administrative Law Judge (ALJ) Gary L. Vanderhoof in mid-September, 1996.  Plaintiff's initial request was for a statistical report of decisions, appeals taken, reversals on appeal, and complaints charging judicial bias for each ALJ in the Albuquerque SSA office, but her request was "passed up the line" for several months until it was ultimately denied on May 9, 1997 "on the spurious grounds that the agency need not compile information [except] … for agency purposes."  (Court File, Complaint filed August 5, 1997, ¶18, and Exhibits "A" and "K" thereto.)   In response to the denial of her initial request, Plaintiff issued correspondence on May 23, 1996, to SSA in Albuquerque requesting, *inter alia* to review every decision issued by ALJ Vanderhoof for the month of April 1996.  (Complaint filed August 5, 1997, ¶18,

and Exhibit "L" thereto.)  As of the date of filing of the Complaint, Defendant had not granted the Plaintiff the opportunity to view the decisions, and Plaintiff anticipated that "the Defendant will use delaying tactics for many months unless this Court compels Defendant to provide immediate access to the decisions. (Complaint filed August 5, 1997, ¶18.)

Plaintiff believes that a statistical study of decisions issued by ALJ Vanderhooof will prove the existence and extent of his biases.  (Complaint filed August 5, 1997, ¶8.)  Plaintiff further believes that "hundreds of destitute and disabled individuals are wrongly denied Social Security benefits due to bias on the part of ALJ Vanderhoof, with the result that they are forced to live on the streets, forced to suffer without necessary medications, and sometimes die prematurely, creating a burden on society and a burden on New Mexico taxpayers through increased social services."  (Complaint filed August 5, 1997, ¶15.)  It is Plaintiff's position that the information she seeks is of public interest, and should be provided at no charge or at a reduced charge.  (Complaint filed August 5, 1997, ¶14.)

Plaintiff contends that "it is futile to work within the agency in an attempt to obtain the requested information, since the Defendant has consistently given Plaintiff the run-around for months at a time," while making ALJ Vanderhoof's decisions inaccessible to the Plaintiff by sending them to a distant storage facility.

_____

(Complaint filed August 5, 1997, ¶17.)  Credence is lent to Plaintiff's allegation in this regard by Exhibit "I"·to the Complaint, which is a copy of correspondence dated January 28, 1997, from SSA Freedom of Information Officer Vincent Sanudo to Plaintiff, in which Sanudo indicates that statistics regarding complaints of judicial bias, and even the fact of the existence of such complaints, are exempt from disclosure under the Freedom of Information Act.  (Court File, Exhibit "I" to Complaint filed August 5, 1997)  As recently as July 11, 1997, Albuquerque SSA Hearing Office Manager Jeffrey L. Smith refused to release to Plaintiff the decisions of ALJ Vanderhoof, unless compelled to do so "by higher authority." (Complaint filed August 5, 1997, Exhibit "N" (Correspondence from SSA, Albuquerque, Hearing Office Manager Jeffrey S. Smith to Plaintiff.)

Ms. Churchill disagrees with the Defendant that the release of individual claimant's names would constitute an invasion of privacy, noting that claimants routinely appeal SSA decisions to federal district court, where the names of the parties become public record.  (Complaint filed August 5, 1997, at ¶12)  It is important to note that, although she disagrees that privacy is a valid issue in her requests for information (*see* Complaint filed August 5, 1997, ¶12), and the identification of individual claimants would play no part whatsoever in the statistical information requested by the Plaintiff, Plaintiff has nonetheless offered to comply with 5 U.S.C. §552(a) by supplying "adequate written assurance that

the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable." (Complaint filed August 5, 1997, ¶13)  Plaintiff also points out that the Freedom of Information Act provides in pertinent part that, where the disclosure of otherwise public information contains material which would constitute a "clearly unwarranted invasion of personal privacy," the agency "may delete identifying details when it makes available or publishes an opinion."  (Complaint filed August 5, 1997, ¶10, *citing* 5 U.S.C. §552(a)(2)(C)).

Plaintiff seeks the following relief:

1.   That a copy be made available to her of any and all final decisions issued by ALJ Vanderhoof from the Albuquerque Office of Hearings and Appeals;

2.   That an index be made available to her showing each decision granted and denied by ALJ Vanderhoof;

3.   That an index be made available to her showing each decision granted or denied by other ALJs in the Albuquerque Office of Hearings and Appeals;

4.   That an index be made available to her showing the number of Unfavorable Decisions of ALJ Vanderhoof which were appealed, indicating how many of those were reversed or remanded on appeal;

5. That computer records be made available to her for purposes of obtaining statistics on the final decisions issued by the Albuquerque Office of Hearings and Appeals;

6. That Plaintiff be awarded her attorney fees and the costs of this action.

(Complaint filed August 5, 1997, p.6)

### DEFENDANT'S ANSWER

In its Answer, Defendant admits that it has a duty to maintain and make available for public inspection and copying current indices providing identifying information for the public as to any matter issued, adopted, or promulgated. (Court File, Answer filed November 25, 1997, ¶3)   The Agency, however, specifically denies that the decisions of any Social Security Administrative Law Judge constitute the type of information that the Agency is required to disclose. (Answer filed November 25,1997, ¶3)  It is the Agency's position that the material it is required to disclose relates to Agency regulations, rulings, policies and procedures, and not to ALJ decisions.  (Id.)

In its Answer, the Agency further admits that Plaintiff has made requests for certain public information concerning the decisions of ALJ Vanderhoof. (Answer filed November 25, 1997, ¶4)  The Agency denies, however, that it has failed and refused to provide meaningful responses.  (Id.)  Defendant also denies

---

that it has "stonewalled" Plaintiff, and that it has taken no action in response to complaints of bias on the part of ALJ Vanderhooof.  (Answer filed November 25, 1997, ¶16.)

The Agency maintains that it does not keep records in the format requested by Plaintiff, that the reproduction of records in such a format would be unduly burdensome and costly, and that the reproduction of records in such a format would "greatly interfere" with the Agency's automated system.  (Id.)  The Agency contends that the controlling statute in this litigation is 5 U.S.C. §552(a)(2)(E), and not §552(a)(2)(C), as pled by the Plaintiff.  (Answer filed November 25, 1997, at ¶10)   Relying on 20 C.F.R. §402.120, the Agency's position is that it is not required to create new recrods merely to satisfy a [FOIA] request.  (Id., at ¶4.)

It is the Agency's position that, although it "has a duty [pursuant to 5 U.S.C §552(a)(2)(A) to make available for public inspection and copying all final opinions, including concurring an dissenting opinions, as well as orders, made in the adjudication of cases, that duty is "limited to significant decisions of precedential value on which all adjudicators may rely in reaching decisions in other cases."  (Answer filed November 25, 1997, ¶2)

The Agency takes issue with Plaintiff's assertion that the release of the names of individual social security claimants appearing in the requested

_____

information would not constitute an invasion of privacy.  (Answer filed November 25, 1997, at ¶12.)  Defendant avers that the fact that some claimants appeal to federal district court does not automatically make the names of all other claimants public record.  (Id.)  Defendants also deny that the information sought is of public interest and should be made available at no charge.  (Answer filed November 25, 1997, at ¶14)

## THE LEGAL STANDARDS

### PURPOSE OF THE FREEDOM OF INFORMATION ACT

"The Freedom of Information Act was enacted to facilitate public access to Government documents."  United States Dep't of State v. Ray, 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991).  FOIA generally provides that the public has a right of access, enforceable in court, to federal agency records.  Audubon Society v. United States Forest Service, 104 F.3d 1201, 1203 (10th Cir. 1997), citing Anderson v. Department of Health & Human Servs., 907 F.2d 936, 941 (10th Cir.1990).  FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed.  Id.

The United States Supreme Court has defined the "public interest" in FOIA disclosures, as "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to the public understanding of the

---

operations or activities of the government.' " <u>United States Dep't of Defense v.</u> <u>Federal Labor Relations Auth</u>., 510 U.S. 487, ----, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994), *quoting* <u>United States Dep't of Justice v. Reporters Comm.</u> <u>for Freedom of the Press</u>, 489 U.S. 749, 775, 109 S.Ct. 1468, 1482-83, 103 L.Ed.2d 774 (1989) (alteration in original).

### *THE AGENCY CARRIES THE BURDEN*

Consistent with the purpose of the FOIA, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents.  That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document.  <u>United States Dep't of State v.</u> <u>Ray</u>, 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.2d. 526 (1991) (citations omitted).

The Tenth Circuit has ruled that, in all FOIA litigation, "the 'burden is on the agency' to show that requested material falls within a FOIA exemption." <u>Sheet</u> <u>Metal Workers International Association, Local No. 9 v. United States Air Force</u>, 63 F.3d 994, 997 (10th Cir. 1995), *quoting* <u>Petroleum Info. Corp. v. United States</u> <u>Dep't of Interior</u>, 976 F.2d 1429, 1433 (D.C.Cir.1992) (*quoting* 5 U.S.C. S 552(a)(4)(B)).

---

***EXEMPTIONS***

Public access to government information is not "all-encompassing." Hale v. United States Dep't of Justice, 973 F.2d 894, 898 (10th Cir.1992), *vacated on other grounds.* 509 U.S. 918, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993).   Access is permitted "only to information that sheds light upon the government's performance of its duties."  Hale, 973 F.2d at 898.

FOIA contains nine specific exemptions from disclosure.   Only one is claimed to be relevant to this case:   exemption 6 prohibiting the disclosure of information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy."   5 U.S.C. §552(b)(6); see Answer filed November 25, 1997, ¶12.

To determine whether an exemption prevents disclosure, the Court must "'balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect.' "   United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, ----, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994) (*quoting* Reporters Comm., 489 U.S. at 776, 109 S.Ct. at 1483) (alteration in original); *see*  Federal Labor Relations Auth. v. United States Dep't of Defense, 984 F.2d 370 (10th Cir.1993); Andrews v. Veterans Admin., 838 F.2d 418, 423 n. 8 (10th Cir.), *cert. denied*, 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 35 (1988).

The "privacy interest" protected from unwarranted invasion by exemption 6 encompasses "the individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763, 109 S.Ct. at 1476.  Further, the Court reiterated in *Federal Labor Relations Auth.* that "'whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.' "  510 U.S. at ----, 114 S.Ct. at 1013 (*quoting* Reporters Comm., 489 U.S. at 771, 109 S.Ct. at 1480-81).

Speaking directly to the issue of whether an asserted exemption applies, the Court in *Vaughn vs. Rosen*, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, held that the Agency has the burden of demonstrating why it is exempt from disclosing the requested records, and must provide a "detailed analysis" of the request and the reasons for invoking the exemption.  Specifically, the Vaughn Court held that the Agency must submit affidavits that (1) describe the withheld documents and the justifications for nondisclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith.  Vaughn v. Rosen, 484 F.2d 820 (1973);*see also*, Patterson v. FBI, 705 F.Supp. 1033 (D.C.N.J. 1989) (Agency may meet its burden through filing affidavits that describe the material being withheld and articulate why the material falls within a claimed exemption.)

_____

In *National Prison Project vs. Sigler*, 390 F.Supp. 789 (D.C. Dist. 1975), the Agency attempted to withhold as exempt the written decisions of the parole board, since these decisions were not used as precedent.  The United States District Court for the District of Columbia rejected that argument, stating that the Agency's position involved a "tortuous reading" of §552(a)(2).  Id.  The Agency also argued that the requested records were exempt because they contained medical and other personal and confidential information about individual prisoners.  The Court disagreed with this argument as well, based largely upon the fact that the Plaintiff was willing to have the identifying matter (including the inmates' names) deleted from the public file, to the extent necessary to protect the prisoners' privacy.  Id.

In *Department of the Air Force vs. Rose*, 525 U.S. 352, 96 S.Ct. 1592, 482 L.Ed.2d 11 (1976), the Court ruled that, if the parties could not agree regarding the classification of a requested file as a medical file exempt from disclosure, the court may hold an *in-camera* review of the disputed documents.

### *"FINAL AGENCY DECISIONS" ARE SUBJECT TO FOIA DISCLOSURE*

Section 552(a)(2)(A) of the Federal Freedom of Information Act (FOIA) requires that "final opinions" and "orders" of federal agencies be made available for public inspection.  5 U.S.C. §552(a)(2)(A).  A "final opinion" has been held to

include not only the final determination, but also the record or document stating the conclusions and reasons upon which the Agency acted.  Grumman Aircraft Engineering Corp. v. Renegotiation Board, 325 F.Supp. 1146 (D.C. 1971), Aff'd 482 F.2d 710 (App. DC)

Anything relied upon by the Agency in reaching a final decision must also be disclosed.  Sears, Roebuck & Co. v. NLRB, 346 F.Supp. 751 (D.C. Dist. 1972), *Aff'd without opinion* 480 F.2d 1195 (App. DC).  To the extent that "exempt" records are relied upon by an agency in reaching a decision, those records lose their exempt status.  Id.  Inter-agency memoranda are exempt, for example, but lose that exempt status if mentioned in a final decision or final opinion made in the adjudication of cases.  *See* NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 44 L.Ed.2d 29, 95 S.Ct. 1504 (1975).

The analysis of whether a particular Agency document constitutes a "final opinion" or "order" involves the weighing of several factors.  Courts have considered whether the document contains the explanations for the Agency's decision, whether the responsible decisionmaker actually relied on the reasons set forth in the document, whether the agency was involved in the "adjudication" of a "case," whether a party was seeking to enforce a statutorily protected right through statutorily provided procedures, and whether the memorandum in question was "post-decisional."  *See, e.g,* Willamett Industries, Inc. v. U.S., 530

F.Supp. 904 (D.C. Or. 1981); <u>Bristol-Meyers Co. v. FTC</u>, 598 F.2d 18 (1978);

<u>Badran v. U.S. Dept. of Justice</u>, 652 F.Supp. 1437 (N.D. Ill. 1987).

### *AGENCY "RECORDS" ARE SUBJECT TO FOIA DISCLOSURE*

Agency records are subject to disclosure under FOIA.  *See* <u>Bureau of Nat.</u>

<u>Affairs, Inc. v. U.S. Dept. of Justice</u>, 742 F.2d 1484 (App. D.C. 1984).   In

determining whether a particular document constitutes an "agency record," the

Court looks to whether the document is in the Agency's control, whether the

document is generated from within the agency, whether the document is placed

in Agency files, and the whether the document is used by the agency for any

purpose.   Id.   The inquiry must focus on a variety of factors including the

creation, possession, control, and use of the document by the Agency. <u>Id</u>.  There

must be a nexus between the Agency's work and the record, and disclosure

requirements do not reach personal papers that may relate to an employee's

work, such as a personal diary. <u>Id</u>.

---

## COMPUTER-STORED RECORDS ARE SUSCEPTIBLE TO FOIA DISCLOSURE

Computer-stored records, whether stored in a central processing unit, on magnetic tape, or in other form, are "records" for purposes of FOIA.   Yeager v. Drug Enforcement Administration, 678 F.2d 315 (D.C. App. 1982).

## SUMMARIES OF RECORDS ARE DISCLOSABLE UNDER FOIA

In *Teich vs. Food and Drug Administration*, 751 F.Supp. 243 (D.C. Dist. 1990), the Court ruled that the Plaintiffs had the right to obtain a summary of consumer complaints about breast implants.  Once such a summary was filed with the Agency, the Court ruled, it became an agency "Record" subject to disclosure under FOIA.

## <u>ARGUMENT</u>

### *ALL INFORMATION REQUESTED BY THE PLAINTIFF IS FULLY DISCLOSABLE UNDER FOIA*

The Agency's position that the decisions of ALJ Vanderhoof and the other ALJs of the Albuquerque Office of Hearings and Appeals are not subject to disclosure under FOIA is untenable to say the very least.  These documents

---

clearly meet the definitional requirements for a "final opinion" or "order" pursuant to 5 U.S.C. §552(a)(2)(A).  *See* <u>Willamett Industries, Inc. v. U.S.</u>; <u>Bristol-Meyers Co. v. FTC</u>; <u>Badran v. U.S. Dept. of Justice</u>.  Even if the documents did not meet the definitional criteria for "final opinions" or '"orders" of the Agency, there can be no credible argument advanced that each of them is not an Agency "record", and therefore subject to disclosure.  *See* <u>Bureau of Nat. Affairs, Inc. v. U.S. Dept. of Justice</u>.  The Agency's attempt to limit the definition of "final opinion or order" to only those documents having precedential value is without support in the law of FOIA.

Also highly relevant to this litigation is the fact that, notwithstanding its conclusory allegations, the Agency has made absolutely no effort to comply with the requirement that it provide an itemized and detailed summary of the records it seeks to withhold, together with detailed reasons for the assertion that these documents fit within a statutory exemption .  *See* <u>Vaughn v. Rosen</u>.

As regards Plaintiff's request that the Agency make accessible to her its computerized records (*see Yeager v. Drug Enforcement Administration*) or summaries of decisions by the ALJs (*see Teich vs. Food and Drug Administration*) the same argument applies.  The Complaint filed in this case indicates that, in July of 1997, an agent of the Defendant admitted to the Plaintiff that it would take only 15 or 20 minutes for a clerical worker to obtain a two-

month statistical sampling of ALJ Vanderhoof's decisions.    (Complaint filed August 5, 1997, ¶19.)

It is clearly apparent that the material sought is in the public interest, as its "disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to the public understanding of the operations or activities of the government.' " United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, ----, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994), *quoting* United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 1482-83, 103 L.Ed.2d 774 (1989) (alteration in original).  In this case, that understanding is an understanding of the manner and mode in which SSA is deciding the cases of disability claimants, and the degree to which the agency is exercising supervisory control over its decision makers.

As regards the Agency's spurious argument that the information sought would compromise claimant's privacy rights (*see* Answer filed November 25, 1997, ¶12), it is apparent that the inclusion of identification of the claimant in a "final agency decision" or "order" renders this information non-exempt.   *See* Sears, Roebuck & Co. v. NLRB.  It is noteworthy, however, that the identity of claimants is not the central focus of Plaintiff's research and that she has offered to comply with §552a by certifying that she will preserve the confidentiality of individual claimant's identities (Complaint, ¶13) and Plaintiff further points out that

_____

§552(a)(2)(C) would allow SSA to release redacted versions of the requested documents if it can show that release of the documents in unedited form would constitute a "clearly unwarranted invasion of privacy." (Complaint, ¶10)  The Agency is unlikely to be able to make such a showing, but the Plaintiff has nonetheless offered to accept even redacted versions of the requested documents, and even so has thus far been rebuffed in her efforts, thereby lending additional fortification to her allegations of bad faith on the part of SSA.[2]

### THE TENTH CIRCUIT'S OPINION IN *SHEET METAL WORKERS vs. USAF* IS DISTINGUISHED FROM THE CASE AT BAR

In *Sheet Metal Workers International, Local No. 9 vs. United States Air Force*, a union sought the release of payroll records and apprentice lists, with names, which it contended would shed light on the Air Force's compliance with the Davis-Bacon Act, 40 U.S.C. §276a.[3]  63 F.3d at 997  The Tenth Circuit

---

[2]   The fact that the Plaintiff has offered to accept even redacted material should not be taken as a waiver of the requirement that the Agency must justify any such redaction. See United States Dep't of State v. Ray, and cases cited therein.  It is Plaintiff's position that that the Freedom of Information Act imposes an independent obligation on the Court to examine the validity of an Agency's withholding of information, regardless of an individual Plaintiff's willingness to negotiate.

[3]   The Davis-Bacon Act requires requires that workers employed on federal construction projects be paid wages at the rate prevailing for similar workers in the project area.  *See also* the Copeland Anti-Kickback Act, 40 U.S.C. §276c, which provides for monitoring and enforcement of the Davis-Bacon Act.

---

reversed the district court's grant of summary judgment in favor of the union, holding that

> In sum, three circuits have held that employees of private contractors performing federal construction projects have a substantial privacy interest in personal financial information with personal identifiers linking the individual to the financial information. They have further held that that interest outweighs any recognized public interest in the disclosure of such information. …. Finding no principled basis upon which to distinguish the rationale of those three decisions, we reverse the decision of the district court. Sheet Metal Workers International, Local No. 9 v. United States Air Force, 63 F.3d 994, 998, *citing* Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force, 26 F.3d 1479 (9th Cir.1994); Painting & Drywall Work Preservation Fund v. HUD, 936 F.2d 1300 (D.C.Cir.1991); Hopkins v. HUD, 929 F.2d 81 (2d Cir.1991).

The Plaintiff's request in this instance is distinguishable from the request made in *Sheet Metal Workers* in that she in no fashion wishes to focus on the identifying information of individual SSA claimants.  More significantly, however, the payroll records and apprentice lists sought by the union in *Sheet Metal Workers* are not "final agency decisions or orders" under any of the several definitions thereof.  In the case now before the Court, the information sought comprises precisely those documents, and their statistical derivatives, that represent the Agency's final work product, at least insofar as the Albuquerque Hearing Office is concerned.  This information falls, therefore, squarely within the FOIA's central purpose, which is to facilitate and enforce disclosure where,

"disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to the public understanding of the operations or activities of the government.' "  United States Dep't of Defense v. Federal Labor Relations Auth., *quoting* United States Dep't of Justice v. Reporters Comm. for Freedom of the Press (alteration in original).  Indeed, it is difficult to think of any public interest more significant than that of understanding the decisionmaking processes of an agency responsible for administering a fund in which every man, woman and child working in the United States today participates, and upon which many, and eventually almost all, rely for sustenance in time of need.

To the extent that such claims are not vitiated by the inclusion of the claimed exempt material in a final agency decision or order, any claim of privilege or "exempt" status advanced by the Agency must be weighed against the overwhelmingly strong nature of the public interest sought to be served through the release of the requested information.  *See* United States Dep't of Defense v. Federal Labor Relations Auth.

## CONCLUSION

The Social Security Administration has failed entirely to meet its burden of showing that some or all of the information requested by the Plaintiff is exempt from disclosure.  All of the Agency's defenses are conclusory and unsupported

by proper evidentiary showings in the form of affidavits, and should be viewed by the Court as self-serving, given that the Plaintiff seeks to have disclosed information that is of great public interest, but is potentially embarrassing to the Agency.  The information sought constitutes final agency decisions or orders, or the derivatives thereof, and any claim of exemption is therefore vitiated.  To the extent that any claimed exemption is valid, withholding of the entirety of the requested documents is completely unjustified, as redaction can protect any privacy interests that are implicated.

For the reasons set forth in this Brief, the Court should order the Social Security Administration to provide the Plaintiff with all requested information, reports and statistics.  The Court should also order the Agency to pay Plaintiff's costs and attorney fees incurred in the bringing of this action, and grant such other and further relief as may be justified in the premises.

Respectfully Submitted,

_____
Dennis W. Montoya
Attorney for Plaintiff,
    Martha A. Churchill, Esq.
P.O. Box 15235
Rio Rancho, NM  87174-0235
(505) 896-1708
(505) 896-1804 (Facsimile)

_____

Also:       1905 Lomas Boulevard, NW
                     Albuquerque, NM  87104
                     (505) 246-8499
                     (505) 246-8599 (Facsimile)

## ATTORNEY'S CERTIFICATE OF MAILING

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Brief-in-Chief was mailed to opposing counsel at the following address this ____1^st____ day of June, 19__98____.

Joan Hart, Esq.
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM  87103

_____

_____