## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARTHA A. CHURCHILL,**

**Plaintiff**

**Civil No. 97-1030 MV/LCS-ACE**

**vs.**

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

**Defendant.**

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE BRIEF

Defendant sets forth the many letters set from the plaintiff in her attempt to obtain information pursuant to the FOIA, and the many responses, all covering a time period of nearly a year.  *See* Defendant's Brief, pages 1-4.  The agency's response time to the first request was about eight months, at which point the agency flatly refused to give any of the information requested. The last request was similarly refused, but more quickly, in about four months.

The FOIA requires an agency to respond within 10 working days of the request, by either supplying the information, promising to supply it, or explaining why not.  *See* 5 U.S.C.A. § 552(a) (6) (A) which allows the agency 10 working days to state whether it will comply with the request. By the defendant's own admission, it failed to comply with this statutory requirement.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

According to the statute, a plaintiff has exhausted his or her administrative remedies if the agency fails to respond in a timely fashion, as set forth in 5 U.S.C.A. section 552(a) (6) (C)*; see also* Ogelsby v. Dept. of Army*, 920 F.2d 57 (D.C. Cir. 1990).  The defendant in this case failed to respond in ten working days.  Furthermore, it has raised a host of inapplicable objections, both in

the course of engaging Plaintiff in useless correspondence over this issue between September 1996 and August 1997, but also in its brief to this Court.

Plaintiff has not enlarged her FOIA request in the lawsuit.  Plaintiff is merely pointing out that final decisions by all administrative law judges ought to be available to the public, not just the ones issued by ALJ Gary L. Vanderhoof.  If the defendant believes that decisions by ALJs other than Mr. Vanderhoof are not included in this FOIA request, it ought to release Mr. Vanderhoof's decisions, while disputing release of the others.  However, it has not done so.

## COST OF RELEASING AGENCY DECISIONS

While claiming that it would be too expensive to release every decision of every ALJ, the defendant has meanwhile released no decisions whatsoever.  If the defendant regards it as too burdensome and expensive to release all the decisions, does the defendant have the resources to release at least one decision?  Apparently not, since the defendant has never released a single decision for review by this plaintiff.

Obviously, cost is not the deciding factor for defendant.  Instead, defendant is simply attempting to cover up the gross injustice done to claimants whose cases are assigned to the "wrong" ALJ.  By complying with the FOIA, and by making final agency decisions available for public inspection, the agency runs the risk that members of the public will learn of judicial bias.

## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

Surprisingly, the defendant attempts to justify its violation of the FOIA by admitting that it is in violation of the Administrative Procedures Act.  Defendant's Brief, pages 7-9.  The defendant

claims that it may be required to make final agency decisions available to the public, but that it has no duty to make such decisions available to this plaintiff.

As for the final agency decisions, the agency has in fact created those records. It is ludicrous for the defendant to claim that it has no duty to release records which do not exist, when the records being requested are the final agency decisions.

Originally, plaintiff asked only for a count of ALJ Vanderhoof's decisions, to learn how many were favorable and how many were unfavorable. That request would have taken a very short time, had the defendant been inclined to count up the decisions as requested. While the defendant insists it does not keep statistics as to this ALJ's decisions, it nevertheless submitted an affidavit from Joyce Schaul stating that ALJ Vanderhoof issued 777 decisions during fiscal year 1998. Obviously, the agency is capable of keeping count, and does keep count.

Plaintiff was later forced to request a copy of the actual decisions, on the theory that she could count them up if defendant would not. As Ms. Schaul points out in her affidavit, the decisions themselves are available at the Albuquerque Hearing Office. If the defendant had cooperated appropriately with plaintiff s FOIA request when she first wrote to the agency in September 1996, the defendant would have had fiscal year 1996 available on its computer. Through the use of unreasonable delaying tactics, defendant has now succeeded in wasting more than two years since plaintiff s first request in September 1996, and now wishes to excuse itself from compliance on the grounds that too much time has gone by, making it unreasonably difficult to obtain the records.

Defendant should not be rewarded for its refusal to comply in a timely fashion, or allowed to "bootstrap" its arguments in this fashion.  It is possible that the requested records are more difficult to retrieve now, but the agency had the power to release the records in the first place.  The FOIA will have no meaning if an agency can simply stall for time, then fail to release its records on the grounds that they are too old.

## DOCUMENTS HAVING PRECEDENTIAL SIGNIFICANCE

Defendant argues that it need not release agency decisions unless they have precedential significance.  *See* Defendant's Brief, pages 10-11.

It is true that regulations, rulings and decisions with precedential significance must be published in the Federal Register.  However, that does not obviate the fact that all final agency decisions need to be made available for public inspection.

An analogy can be readily drawn to the U.S. District Courts.  Some of the decisions issued by a federal judge become published opinions and take precedential significance.  Others are issued without publication.  Either way, final decisions of the Court are available to the public.  Anyone can walk into the U.S. District Court clerk's office and ask to review files.  The clerk of the court would never say that a final decision of a District Court Judge must be withheld from public scrutiny merely because it was not selected for publication.

Similarly, the defendant is free to select certain decisions for inclusion in the Federal Register.  But that action does not protect the rest of its decisions from public disclosure.

## PRIVACY INTERESTS

Defendant indicates it is exempt from compliance with this FOIA request, since the final decisions generally refer to confidential medical information. *See* Defendant's Brief, pages 11-14. If a celebrity, such as a politician or television performer, were applying for Social Security benefits, reporters might wish to review that claimant's medical records which would be contained in the Social Security file. The FOIA does not allow any member of the public to request confidential medical records about a private person. The purpose of the FOIA is to cast light on the workings of the government, not to reveal personal secrets of individual citizens. *McDonnell v. U.S.,* 4 F.3d 1227 (3rd Cir. 1993).

Once the person has died, the privacy interests would no longer apply. McDonnell, 4 F.3d at 1254. Furthermore, the government has the burden of proof as to whether an individual is still living. So, the defendant would have no need to redact the name of a claimant on a decision once the claimant has died. This distinction is not important to the plaintiff in this case, so it would probably be simpler and easier for defendant to redact the names of all claimants, regardless whether they are alive.

*In McDonnell,* the plaintiff requested medical files concerning a particular individual. The plaintiff was interested in learning about that individual, and had no interest in learning about the inner workings of the governmental agency which kept the records in question. The court properly refused to require release of the records, noting that the purpose of the FOIA is "to let the citizenry know what their government is up to."

_____

The plaintiff in this case has no interest in learning personal facts about particular claimants.  Her sole purpose in requesting these records is to find out what the agency is up to.  The plaintiff has reason to believe that one or more individual ALJs routinely violate the Social Security Act by denying benefits to claimants who qualify.  Plaintiff believes that ALJ Vanderhoof exhibits bias against persons suffering mental illness.  The only way to obtain evidence of this type of governmental wrongdoing is to review the actual agency decisions.

To avoid loss of privacy to individual claimants, plaintiff has already agreed that the names of claimants may be redacted, along with any other identifying information.  Plaintiff wishes to respect the privacy rights of claimants.

Defendant cited *McDonnell* erroneously as support for the idea that no medical records can be released, no matter what.  But that is not what the case says.  *McDonnell* supports plaintiff s position, not defendant's position.

Another case cited by defendant is *Sheet Metal Workers v. U.S. Air Force,* 63 F.3d 994 (10th Cir. 1995).   In that case, a labor union sought payroll records from a government contractor.  The union asked for complete records, including the names and addresses of the employees, their job titles, job duties, and salaries.  The government agreed to release the records, but with the employees' names and addresses redacted.

Defendant points to this case as authority for its refusal to release final agency decisions for inspection by the plaintiff.  However, the case supports plaintiffs position, not defendant's position.  The governmental agency in *Sheet Metal* actually released the records as requested, but redacted the names and addresses of the employees.  The union appealed, insisting it had a right

to the names and addresses.  The court disagreed, and ruled that release of the employees' names would violate their right to privacy.

According to *Sheet Metal,* the defendant ought to release its final agency decisions, with the names redacted, as requested by plaintiff.

## COST OF COMPLIANCE

Defendant argues that the cost of compliance with this FOIA request is prohibitive.  While the plaintiff has not yet engaged in any discovery, it would seem ludicrous that the agency is financially unable to reveal documents which are readily available in its Albuquerque office.

Every day, the defendant mails out numerous final decisions which are printed out after being typed on word processing equipment.  Those decisions can and should be available to plaintiff for inspection, or indeed, for inspection by any member of the public.  The cost of printing out one extra copy of each decision, for public view, would be nominal.  It would take only a few seconds to strike out the claimant's name and Social Security number with a black marker.

Plaintiff believes that defendant has mischaracterized the statements made in published opinions such as McDonnell and Sheet Metal, as explained above.  All the more so, the agency is willing to exaggerate the cost of releasing its final decisions.

If the agency released all decisions to the public when issued, the cost of "searching" for them would be zero.  If a clerical worker zipped off the name of the claimant with a black marker, the cost would be nominal.  Certainly it is more costly and time consuming to get the requested records after several years have gone by, but the delay is caused entirely by the agency, and the

agency should rectify the situation by producing the final agency decisions without charging plaintiff for the added cost due to the defendant's delay.

The affidavit of Joyce Schaul indicates that defendant's employees, paid $28 per hour, will spend many hours attempting to search for and review the decisions of ALJ Vanderhoof.  This is absurd, in that plaintiff originally asked only for a count of his favorable and unfavorable decisions.  Obviously, the agency has the information in its computers.  Now, in an attempt to avoid compliance with the FOIA, the defendant is manufacturing unreasonably high costs and claiming plaintiff should pay these exorbitant fees merely to have access to records which should have been made public in the first place.

## PUBLIC INTEREST

Defendant claims that there is no public interest in having these final agency decisions available for public inspection.  *See* Defendant's Brief, pages 15-17.

Disclosure of these records is certainly in the public interest.

Defendant states that plaintiff should have asked for a fee waiver when she made her original FOIA requests.  This is nonsense, since the agency never indicated it would charge a fee.  Surely the plaintiff has no duty to ask for waiver of a fee which was never charged.  During the lengthy correspondence between plaintiff and defendant prior to bringing this lawsuit, the defendant never mentioned that it was refusing to release records due to failure to pay a fee.  Instead, defendant stated that it supposedly did not have the records, or could not release them out of privacy concerns.

In any event, the U.S. Supreme Court has stated clearly that it does not matter whether someone requesting records has a public interest motive in doing so.  *U.S. Dept. of Justice v. Reporters Committee,* 489 U.S. 749 (1989).

> ... the rights of the two press respondents in this case are no different from those that might be asserted by any other third party, such as a neighbor or a prospective employer.  As we have repeatedly stated, Congress "clearly intended" the FOIA "to give any member of the public as much right to disclosure as one with a special interest [in a particular document]."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)...

> Reporters Committee, 489 U.S. at 771

Agency records must be made available to the public, so as to prevent government corruption.  Corruption thrives in an atmosphere of secrecy.  Unfortunately, the Social Security Administration has become accustomed to secrecy, and probably this is the main reason an ALJ such as Mr. Vanderhoof can ignore the law.  If no one can have access to his decisions; he operates in secret.  If his decisions were available for public inspection, that fact alone would likely have a salutary effect on his actions, whether anyone reads the decisions or not.

Defendant makes the spurious argument that plaintiff should have to pay many thousands of dollars to view the agency's final decisions, on the grounds that she is not a member of the media, a teacher, or a publisher.  It so happens that the plaintiff is the author of numerous published articles on a variety of legal and social issues, and has just completed a legal treatise for West Publishing Company scheduled for publication in the fall of 1999.  She has written numerous articles in 1998 which were published by daily newspapers.  She is an active member of NAMI, the National Alliance for the Mentally Ill, as well as the Association for Retarded Citizens.

Persons with mental illness or mental retardation are especially likely to be victims of bias by ALJ Vanderhoof, and plaintiff intends to expose-- and hopefully stop-- such bias.

Defendant attempts to denigrate plaintiff's motives by stating that she is "merely" advancing administrative claims.  If a claimant suffers from a genuine disability, and has been denied benefits due to bias on the part of ALJ Vanderhoof, surely the public interest is advanced by exposing such bias so that the problem can be corrected.  Defendant apparently wants to continue the status quo, government behind closed doors, a situation expressly disapproved of by the court in *Reporters Committee.*

The requested information in *Reporters Committee* had to do with a rap sheet held by the FBI on a certain Mr. Medico, a reputed criminal.  The request for information involved Mr. Medico as an individual, not the workings of the governmental agency which kept the records on Mr. Medico.  The U.S. Supreme Court held that the FOIA would have required release of information calculated to shed light on the workings of the governmental agency, but that personal information solely about Mr. Medico was not covered by the FOIA.

> This basic policy of .."'full agency disclosure unless information is exempted under clearly delineated statutory language, '" *Department of Air Force v. Rose,* 42 5 U. S., at 360-361 (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)), indeed focuses on the citizens' right to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose.   That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct. ...
>
> The point is illustrated by our decision in *Rose, supra.*  As discussed earlier, we held that the FOIA required the United States Air Force to honor a request for *in camera* submission of disciplinary-hearing summaries maintained in the Academy's

Honors and Ethics Code reading files.  The summaries obviously contained information that would explain how disciplinary procedures actually functioned and therefore were an appropriate subject of an FOIA request.  All parties, however, agreed that the files should be redacted by deleting information that would identify the particular cadets to whom the summaries related.  The deletions were unquestionably appropriate because the names of the particular cadets were irrelevant to the inquiry into the way the Air Force Academy administered its Honor Code - leaving the identifying material in the summaries would therefore have been a "clearly unwarranted" invasion of individual privacy.  If, instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about the persons to whom those files related, the public interest that supported the decision in *Rose* would have been inapplicable.  In fact, we explicitly recognized that "the basic purpose of the [FOIA is] to open agency action to the light of public scrutiny.
*Reporters Committee,* 489 U.S. at 773-774.

## CONCLUSION

Defendant has raised a number of spurious issues.  It should be obvious to the Court that the defendant will resort to any tactics, however lacking in merit, to avoid revealing the information it should have made public all along.

If the Court allows it, the defendant can be expected to force lengthy and expensive discovery, hoping that the plaintiff will give up due to the high costs of litigation.  Defendant has no reasonable grounds for refusing access to the final agency decisions of ALJ Vanderhoof or any other ALJ.  So far, defendant has offered to make absolutely nothing available to the plaintiff for inspection.  This has nothing to do with costs, nothing to do with privacy.  It has everything to do with the Social Security Administration maintaining its atmosphere of secrecy, preventing the public from shedding any light on the agency's actions.

Respectfully submitted,

_____

Dennis W. Montoya
Attorney for Plaintiff
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 246-8499
(505) 246-8599 (Facsimile)

Also:

P.O. Box 15235
Rio Rancho, NM  87174-0235
(505) 896-1708
(505) 896-1804 (Facsimile)

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply Brief was mailed to opposing counsel of record at the following address:

Joan Marie Hart, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM  87103

Dated this  4th  day of ___November___, 19__98__.

_____